**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER REYNOLDS, ) | |
| ) | |
| Plaintiff, ) | Case No. |
| ) | |
| v. ) | Judge |
| ) | |
| INTER-INDUSTRY CONFERENCE ON AUTO ) | Jury Trial Demanded |
| COLLISION REPAIR (a/k/a I-CAR), ) | FILED |
| ) | APRIL 14, 2008            YM |
| Defendant. ) | 08CV2115 |
| | JUDGE COAR |
| | MAGISTRATE JUDGE DENLOW |

**COMPLAINT**

Plaintiff, Christopher Reynolds, by and through his attorneys, Pedersen & Weinstein LLP, for his Complaint against Defendant, Inter-Industry Conference on Auto Collision Repair, states as follows:

**JURISDICTION AND VENUE**

1. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343, and 29 U.S.C § 1132(a)(3).

2. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a).

**PARTIES**

3. Plaintiff, Christopher Reynolds, was formerly employed by Defendant as an IT Systems Manager at Defendant's headquarters in Hoffman Estates, Illinois. Plaintiff began his employment with Defendant in August 2005 and was unlawfully terminated in August 2006.

4. Defendant, Inter-Industry Conference on Auto Collision Repair ("I-CAR" or "Defendant"), researches, develops and conducts training programs in automotive collision repair throughout North America.

5. Defendant employs nearly 400 employees in this country and Canada. At all

times relevant to this Complaint, Defendant was engaged in an industry affecting commerce.

## FACTUAL ALLEGATIONS

6.      Plaintiff began working for Defendant as an IT Systems Manager in August 2005. Throughout his employment, Plaintiff discharged all duties assigned to him competently and enjoyed an excellent reputation with regard to the quality of his work and his conscientious devotion to his job.  Notwithstanding Plaintiff's impressive job performance, his employment was unlawfully terminated in August 2006.

7.      More specifically, on or about August 8, 2006, Plaintiff's fiancé, who was pregnant, went into premature labor three months before the baby was due.  Plaintiff promptly notified his supervisor as well as Defendant's human resources department of his family's medical emergency and requested time off of work.  As of this date, Plaintiff had accumulated several days of paid time off and did not anticipate there would be any problem with his request, particularly under the exigent circumstances.  After Plaintiff's initial request, Plaintiff continued to keep Defendant updated on the status of his fiancé and unborn child.

8.      On August 10, 2006, the condition of Plaintiff's fiancé and his unborn child deteriorated, requiring an emergency caesarian section.  Plaintiff's son's premature birth resulted in serious medical complications, including an acute pulmonary condition and the necessity of a blood transfusion.

9.      Shortly after Plaintiff's son was born, Plaintiff again updated Defendant about the medical condition of his son and fiancé.  Plaintiff also notified Defendant that he needed to add his son to Defendant's health insurance and requested additional time off of work to deal with his family's medical crisis.  Over the course of the following days, Plaintiff continued to update Defendant regularly about his family's status.

10. On or about August 16, 2006, Plaintiff returned to work. That morning, Plaintiff notified human resources that his son's doctors anticipated that he would remain hospitalized in the neonatal intensive care unit (NICU) for at least the next three months. Plaintiff explained that his fiancé was using her own maternity leave to be with their son while he was in the hospital, and that he was requesting leave under the Family and Medical Leave Act to care for his newborn son after he was released from the hospital in early to mid November 2006. The human resources representative told Plaintiff she would look into his request and get back to him.

11. Around mid-day on August 16, 2006, Plaintiff learned that his son was suffering from a life-threatening condition, so he quickly returned to the hospital. Plaintiff promptly informed his supervisor of his son's declining medical condition, and a few hours later, after his son's condition stabilized, tried to reach human resources again to discuss his son's health insurance coverage and the status of his earlier request for FMLA leave. However, Plaintiff was only able to leave a detailed voicemail message.

12. At the end of the business day on August 16, 2006, Plaintiff's supervisor and the director of human resources called and fired him. Defendant claimed that Plaintiff was being fired because of his performance, notwithstanding the fact that he had recently received a bonus based in part on his performance. Plaintiff was shocked that Defendant would so callously fire him as he was trying to deal with the serious medical condition of his newborn son, particularly when Defendant knew the significant medical bills Plaintiff would face with his son's three-month stay in NICU. Given the highly suspicious timing of his termination, Plaintiff directly asked Defendant whether he was being fired because of what was happening in his personal life.

Plaintiff's supervisor lied and said that Plaintiff's termination was purely related to Plaintiff's skill set.

13.     Also during the call in which Defendant terminated Plaintiff's employment, the human resources director falsely stated that Plaintiff would not have been eligible for FMLA leave in any event because he had not yet worked for Defendant for one year, obviously ignoring the fact that as of the date Plaintiff's requested leave would have begun, he would have been employed by Defendant for well over a year and fully eligible for FMLA leave.

*Defendant Violated The Family and Medical Leave Act*

14.     By the adverse actions described above, i.e. terminating Plaintiff as a result of his intention to take a leave of absence to care for his newborn son, Defendant violated the Family and Medical Leave Act.

15.     Defendant engaged in this unlawful conduct in retaliation for Plaintiff intending to take such leave, and in order to interfere with his ability to take a leave of absence.

*Defendant Discriminated Against Plaintiff Based On Gender*

16.     Defendant also discriminated against Plaintiff because of his gender by treating him less favorably than women.

17.     For example, upon information and belief, female employees who requested time off of work for reasons such as the birth of a child, to care for a child, or to care for a family member were not fired.

18.     Likewise, upon information and belief, female employees who requested time off for any reason, including leave under the FMLA, were not subjected to discipline or fired.

19.     By the adverse actions described herein, Defendant violated Title VII.

*Defendant Violated ERISA*

20. Plaintiff was a member of an ERISA plan.

21. Plaintiff was qualified for his position.

22. Defendant discharged Plaintiff to deny him benefits.

*Defendant Failed to Exercise Reasonable Care To Prevent and Correct Unlawful Conduct*

23. Defendant's management directed, encouraged, and participated in the above-described unlawful conduct.

24. The discrimination and retaliation described above was consistent with Defendant's standard operating procedure.

25. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights.

*Plaintiff Timely Filed a Charge of Discrimination and Retaliation*

26. Plaintiff timely filed a charge of discrimination with the EEOC. Plaintiff subsequently requested and received his Notice of Right to Sue dated April 1, 2008.

*Plaintiff Suffered Damage*

27. As a direct and proximate result of the unlawful conduct Plaintiff experienced, he has suffered extreme emotional and mental distress.

28. Plaintiff has lost wages, compensation and benefits as a result of Defendant's unlawful conduct.

29. Plaintiff's career and reputation has been irreparably damaged as a result of Defendant's unlawful conduct.

30. Plaintiff suffered embarrassment and humiliation as a result of Defendant's unlawful conduct. Plaintiff suffered loss of enjoyment of life, inconvenience and other non-

pecuniary losses as a direct result of Defendant's unlawful conduct, as well as incurring attorneys' fees and costs.

*Punitive Damages*

31.     Defendant acted and/or failed to act with malice or willfulness or reckless indifference to Plaintiff's rights.  The conduct alleged herein was willful and wanton and justifies an award of punitive damages.

*Liquidated Damages*

32.     Defendant did not act in good faith, nor did it have reasonable grounds for believing its actions were not violations of the FMLA.

33.     The conduct alleged herein was willful and wanton and justifies an award of liquidated damages.

## COUNT I

### UNLAWFUL CONDUCT IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

34.     Plaintiff realleges paragraphs 1 through 33 and incorporates them by reference into Count I of this Complaint.

35.     The Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"), entitles employees to a 12-week leave during any 12-month period for the birth and care of a newborn child as well as to care for a child with a serious health condition.

36.     The FMLA also entitles any employee who takes such a leave to be restored to his former position or an equivalent position with equivalent terms and conditions of employment as his former position.

37.     The FMLA further makes it unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under the Act.

6

38. By its conduct as alleged herein, Defendant violated the FMLA.

39. Defendant's actions toward Plaintiff constitute willful violations of the FMLA.

## COUNT II

**VIOLATION OF § 510 OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT**

40. Plaintiff realleges paragraphs 1 through 39 and incorporates them by reference into Count II of this Complaint.

41. Under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140, it is unlawful for an employer to discharge, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan.

42. Plaintiff was a participant or beneficiary of Defendant's benefit plan.

43. Defendant terminated Plaintiff's employment with the intent of interfering with, preventing or retaliating for the use of such benefits.

44. By its conduct alleged herein, Defendant violated ERISA.

## COUNT III

**GENDER DISCRIMINATION IN VIOLATION OF TITLE VII**

45. Plaintiff realleges paragraphs 1 through 44 and incorporates them by reference into Count III of this Complaint.

46. Title VII, specifically 42 U.S.C. § 2000e(k), makes it unlawful to discriminate against any individual on the basis of sex, including on the basis of pregnancy, childbirth, or related medical conditions.

47.　　By the conduct as alleged herein, Defendant subjected Plaintiff to discrimination in violation of Title VII.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court find in his favor and against the Defendant as follows:

a.　　Declare that the acts and conduct of Defendant violate Title VII of the Civil Rights Act of 1964 and 1991, the FMLA, and ERISA;

b.　　Award Plaintiff the value of all compensation and benefits lost as a result of Defendant's unlawful conduct;

c.　　Award Plaintiff the value of all compensation and benefits he will lose in the future as a result of Defendant's unlawful conduct;

d.　　In the alternative to paragraph (c), reinstate Plaintiff with appropriate promotions and seniority and otherwise make Plaintiff whole;

e.　　Award Plaintiff compensatory damages;

f.　　Award Plaintiff punitive damages;

g.　　Award Plaintiff liquidated damages;

h.　　Award Plaintiff prejudgment interest;

i.　　Award Plaintiff reasonable attorneys' fees, costs and disbursements; and

j.　　Award Plaintiff such other relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

                Respectfully submitted,

Dated:  April 14, 2008            By:   */s/ Jill Weinstein*
                                                        PEDERSEN & WEINSTEIN LLP
                                                        309 W. Washington, Suite 1200
                                                        Chicago, IL  60606
                                                         Telephone:  (312) 855-1200
                                                         Facsimile:   (312) 855-1207
                                                         E-mail:  jweinstein@pwllp.com
                                                         Attorney for Plaintiffs

Erika Pedersen
Jill Weinstein
**PEDERSEN & WEINSTEIN LLP**
309 W. Washington
Suite 1200
Chicago, IL  60606
(312) 855-1200
(312) 855-1207 (facsimile)